UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

—————————————————————— )
                                                    )
UNITED STATES OF AMERICA          )
                                                    )
       v.                                           )          Criminal No. 10-0298 (PLF)
                                                    )
CHARLES IKE EMOR,                     )
                                                    )
              Defendant.                       )
—————————————————————— )

OPINION

After a lengthy evidentiary hearing, this Court concluded that over $2 million and

a 2006 Lexus seized by the government were criminal proceeds of the wire fraud scheme to

which Charles Emor, the defendant in this case, pled guilty.  The Court issued a preliminary

order of forfeiture directing that the property be forfeited to the United States, after which the

government published notice of the forfeiture and sent written notification to known potential

claimants.  One petitioner came forward, claiming an interest in the property and seeking to

challenge its forfeiture: SunRise Academy, a private school in the District of Columbia formerly

headed by Mr. Emor.  The government has moved to dismiss SunRise's petition for lack of

standing.  Because no other petitioners have claimed an interest in the property, the government

also moves for a final order of forfeiture.  For the reasons set forth below, the Court will grant

the government's motion, dismiss SunRise's petition, and enter a final order of forfeiture.[1]

---

[1]        The papers filed in connection with this matter include the following: SunRise
Academy's verified petition for a hearing to adjudicate its third-party claim ("Pet."); the United
States' motion to dismiss SunRise's petition ("Mot."); the United States' supporting
memorandum ("Mem."); SunRise's opposition to the motion to dismiss ("Opp."); the United
States' reply ("Reply"); SunRise's supplemental filing regarding operating expenses ("Supp.");
the United States' response to the supplemental filing ("Resp."); and SunRise's reply to this
response ("Supp. Reply").

## I.  BACKGROUND

Charles Emor pled guilty in August 2011 to one count of wire fraud arising from his misuse of funds from the bank accounts of SunRise Academy, a private school that Mr. Emor founded for special needs students.  The funds came from monthly payments made to SunRise by the District of Columbia as reimbursement for educational and related services.  Mr. Emor's plea agreement provided that the Court would determine the amount of loss caused by his wire fraud scheme, the identity of his victims and the restitution owed to them, the amount of any forfeiture money judgment, and whether the property seized by the government was subject to criminal forfeiture.  See United States v. Emor, 850 F. Supp. 2d 176, 179-81 (D.D.C. 2012).

After an evidentiary hearing spanning eleven days, featuring testimony from eleven witnesses and the admission of over 200 exhibits, and after extensive pre- and post-hearing briefing, the Court found the amount of loss caused by Mr. Emor's fraud scheme to be $2,358,536.40.  United States v. Emor, 850 F. Supp. 2d at 201-02.  This figure was a combination of two amounts: $271,536.40 that Mr. Emor spent or caused to be spent on purchases and payments benefitting himself and his family members and associates, and $2,087,000.00 that Mr. Emor caused to be transferred from SunRise to the bank accounts of Core Ventures, LLC — a for-profit company that, the Court found, was created by Mr. Emor to disguise his misuse of SunRise funds and ensure their continued availability upon his imminent imprisonment (and likely deportation) for an earlier conviction.  Id.

In addition, the Court ordered Mr. Emor to pay $2,358,536.40, in restitution to the District of Columbia, which the Court held was the ultimate victim of his fraud scheme and the source of the funds he misappropriated.  United States v. Emor, 850 F. Supp. 2d at 203, 210-15.[2]

_____

[2]    Some of the money that the District of Columbia paid to SunRise came in turn from the federal government, which provided the money to cover Medicaid-related services for

No restitution was due to SunRise, the Court held, because it functioned as Mr. Emor's alter ego during his fraud scheme and, independently, because restitution to SunRise was barred by the "coconspirator exception" to the Mandatory Victims Restitution Act.  See id. at 201-10.

With respect to forfeiture, the Court ordered the entry of a money judgment of $2,358,536.40 against Mr. Emor.  It also concluded that the property seized by the government — $2,035,307.27 held by Core Ventures that had been transferred from SunRise and a 2006 Lexus purchased by Core Ventures with similarly transferred funds — constituted proceeds of Mr. Emor's fraud scheme and thus was subject to criminal forfeiture.  See United States v. Emor, 850 F. Supp. 2d at 218-19.  Specifically, the Court entered a preliminary order of forfeiture holding the following property forfeited to the United States: (a) $1,810,165.29 seized from BB&T Bank account number # xxxxx9526, held in the name of Core Ventures; (b) $225,141.98 seized from BB&T Bank account number # xxxxx3943, held in the name of Core Ventures; and (c) a 2006 Lexus LX470, VIN: JTJHT00W264011238, registered to Core Ventures.  Id. at 219. Further background and details are available in the Court's lengthy Opinion, Findings of Fact, and Conclusions of Law.[3]

SunRise now seeks modification of the Court's preliminary order of forfeiture, claiming a legal interest in the money seized by the government from Core Ventures' bank accounts and in the Lexus.  This marks the second time that SunRise has sought to obtain this

---

SunRise students.  For reasons explained by the Court, however, restitution was ordered to be paid only to the District of Columbia and not to the federal government.  See United States v. Emor, 850 F. Supp. 2d at 210-11 n.14.

[3]      The Court originally issued a preliminary order of forfeiture at the time of Mr. Emor's sentencing, on November 10, 2011, before the completion of the evidentiary hearing.  It revised that order on March 23, 2012 to reflect the determinations made after the conclusion of the hearing.  The latter order is labeled a "final" order of forfeiture, but as made clear by the governing procedural provisions, it was final only as to Mr. Emor — as to third parties it was, until now, a preliminary order.  See FED. R. CRIM. P. 32.2(b)(4)(A).

property:  After the government first seized the money and the Lexus, but before Mr. Emor's

guilty plea, SunRise and Core Ventures filed a joint motion for their return, "claiming that they

[were] the legal owners of the seized funds and that the funds [were] not subject to criminal

forfeiture."  Sunrise Academy v. United States, 791 F. Supp. 2d 200, 201 (D.D.C. 2011).  The

Court denied that motion — albeit without prejudice — because third parties may not intervene

in a criminal proceeding before conviction or plea in order to contest the forfeitability of seized

property; instead, those parties must wait until "an ancillary proceeding held *after* the entry of a

preliminary order of forfeiture in the criminal case."  Id. at 204 (citing, inter alia, Libretti v.

United States, 516 U.S. 29, 44 (1995)).

Mr. Emor's plea and the evidentiary hearing contemplated by the plea agreement

then ensued.  Upon issuance of the Court's findings and its preliminary order of forfeiture,

SunRise filed a verified petition for an ancillary hearing to adjudicate the validity of its interest

in the seized property, in accordance with the procedures set forth in 21 U.S.C. § 853(n)(2).

After holding such an ancillary hearing upon petition, a court must amend its preliminary

forfeiture order if the petitioner establishes, by a preponderance of the evidence, that it "has a

legal right, title, or interest in the property" that "renders the order of forfeiture invalid in whole

or in part" because the right, title, or interest "was vested in the petitioner rather than the

defendant or was superior to any right, title, or interest of the defendant at the time of the

commission of the acts which gave rise to the forfeiture of the property[.]"  21 U.S.C.

§ 853(n)(6)(A).  Alternatively, a petitioner may obtain amendment of a preliminary order by

establishing that it is "a bona fide purchaser for value of the right, title, or interest in the property

and was at the time of purchase reasonably without cause to believe that the property was subject

to forfeiture."  21 U.S.C. § 853(n)(6)(B).  These are the only two circumstances under which a

third party can succeed in modifying a preliminary order and preventing criminal forfeiture of property in which it claims an interest.

SunRise's petition was signed and verified under penalty of perjury by Leonard Ozoemena, Chairman of SunRise Academy's Board of Directors, who testified at the evidentiary hearing but who, the Court found, had "no direct knowledge of anything with respect to the events at issue in this case, since he was not involved with SunRise from 2002 until June 2010," and whose testimony regarding the relationship between SunRise and Core Ventures the Court found "wholly incredible."  United States v. Emor, 850 F. Supp. 2d at 185-86.[4]

In moving to dismiss SunRise's petition, the government argues that SunRise lacks statutory and Article III standing to assert an interest in the seized property.  Even

---

[4]      Aside from the fact that Mr. Ozoemena had no formal position at SunRise during the period of Mr. Emor's fraud scheme, and thus no personal knowledge of anything that happened during that period, portions of his testimony led the Court to doubt his credibility and reliability.  Illustrative is the following colloquy regarding a tax return on which Mr. Emor heavily relied in trying to demonstrate a critical point:

> Q. Sir, the Tax Return for the year of 2009, what year did you review those documents, the Tax Return for tax year 2009, which is Defense Exhibit No. 38, when did you review that Tax Return?
> A. I reviewed the Tax Returns when I came back as Chairman, which is after June 2010.
> Q. So are you saying that you reviewed these documents in 2010?
> A. Yes. . . .
> Q. Did you review that document in 2010?
> A. Yes.
> Q. Okay. Sir, turn to the second page and see when Mr. Leibowitz [SunRise's outside accountant] prepared that document. That's a September 13th, 2011, right, sir? . . . . Mr. Leibowitz prepared this Tax Return September 13th, 2011. That was last month, right, sir?
> A. Okay --
> Q. So you couldn't have reviewed it in 2010?
> A. I said after I came.
> Q. Okay. fine.
> A. That's what I said, I said after.

Hr'g Tr. (10/14/11 p.m.) at 49-50; see id. at 51.

assuming otherwise, the government maintains, SunRise's petition must be dismissed because it fails to allege circumstances that could entitle SunRise to prevail in an ancillary proceeding and obtain a modification of the Court's preliminary order of forfeiture.  This matter, being fully briefed, is ripe for decision.

## II.  LEGAL STANDARD

Criminal forfeiture proceedings are governed primarily by 21 U.S.C. § 853 and Rule 32.2 of the Federal Rules of Criminal Procedure.  After property that has been seized by the government is made subject to a preliminary order of forfeiture, any third party may file a verified petition with the district court claiming an interest in the property and contesting its forfeiture.  "When a third party files a petition asserting an interest in property that the government seeks to forfeit, the district court is required to conduct an 'ancillary proceeding.'" United States v. Corpus, 491 F.3d 205, 208-09 (5th Cir. 2007) (citing FED. R. CRIM. P. 32.2)); see United States v. Oregon, 671 F.3d 484, 487-88 (4th Cir. 2012) (describing criminal forfeiture procedures).  Although this ancillary proceeding arises in the context of a criminal action, "it closely resembles a civil proceeding."  United States v. Corpus, 491 F.3d at 209.

Before conducting an ancillary hearing, however, a court "must first consider any motion by the United States to dismiss the petition for lack of standing," United States v. Oregon, 671 F.3d at 488, and "a court may dismiss a third-party petition for lack of standing." United States v. Salti, 579 F.3d 656, 667 (6th Cir. 2009); see FED. R. CRIM. P. 32.2, Advisory Committee Notes, Subdivision (c) (noting "areas in which procedures analogous to those in the Civil Rules may be followed," including "the filing of a motion to dismiss a claim").  Under Rule 32.2, "a motion to dismiss a third-party petition in a forfeiture proceeding prior to discovery or a hearing should be treated like a motion to dismiss a civil complaint under Federal Rule of

Civil Procedure 12(b)."  United States v. Oregon, 671 F.3d at 488 (quoting Pacheco v. Serendensky, 393 F.3d 348, 352 (2d Cir. 2004)); accord United States v. Marion, 562 F.3d 1330, 1342 (11th Cir. 2009); United States v. Corpus, 491 F.3d at 209.

On a Rule 12(b)(1) motion to dismiss, the plaintiff bears the burden of establishing that the Court has subject matter jurisdiction, see Sierra Club v. Jackson, 813 F. Supp. 2d 149, 154 (D.D.C. 2011) (citing Brady Campaign to Prevent Gun Violence v. Ashcroft, 339 F. Supp. 2d 68, 72 (D.D.C. 2004)), and a federal court "has no subject matter jurisdiction where the plaintiff lacks standing."  See A.N.S.W.E.R. Coalition v. Kempthorne, 493 F. Supp. 2d 34, 41-42 (D.D.C. 2007) (citing Worth v. Jackson, 451 F.3d 854, 857 (D.C. Cir. 2006)). "While the burden of production to establish standing is more relaxed at the pleading stage than at summary judgment, a plaintiff must nonetheless allege 'general factual allegations of injury resulting from the defendant's conduct.'"  Nat'l Ass'n of Home Builders v. E.P.A., 667 F.3d 6, 12 (D.C. Cir. 2011); see also NB ex. rel. Peacock v. District of Columbia, 682 F.3d 77, 82 (D.C. Cir. 2012) (noting that "at the pleadings stage, the burden imposed on plaintiffs to establish standing is not onerous") (quotation marks omitted).  The Court must accept all well-pled factual allegations as true, see Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005), and must construe the complaint liberally in the plaintiff's favor; but the Court need not accept factual inferences drawn by the plaintiff if those inferences are not supported by the facts alleged.  See Sierra Club v. Jackson, 813 F. Supp. 2d at 154 (citing Primax Recoveries, Inc. v. Lee, 260 F. Supp. 2d 43, 47 (D.D.C. 2003)).  Nor must the Court accept legal conclusions cast as factual allegations.  See Commonwealth of the N. Mariana Islands v. United States, 670 F. Supp. 2d 65, 75 (D.D.C. 2009) (citing Primax Recoveries, Inc. v. Lee, 260 F. Supp. 2d at 47).

With respect to a petition for an ancillary hearing in the criminal forfeiture context, a claimant at the pleading stage "'need not prove the merits of his underlying claim, but he must claim a facially colorable interest in the seized property' to satisfy the requirements of standing." United States v. Salti, 579 F.3d at 667 (quoting United States v. $515,060.42 in U.S. Currency, 152 F.3d 491, 497-98 (6th Cir. 1998)).  "State law determines a petitioner's legal interest in the property at issue."  Willis Mgmt. (Vermont), Ltd. v. United States, 652 F.3d 236, 242 (2d Cir. 2011).[5]  At the motion to dismiss stage, the petitioner is not required to supply evidence supporting a *prima facie* case of entitlement to relief, Pacheco v. Serendensky, 393 F.3d at 352, and the facts set forth in the petition, just like those in a complaint in a civil case, are assumed to be true.  United States v. White, 675 F.3d 1073, 1077 (8th Cir. 2012) (citing FED. R. CRIM. P. 32.2(c)(1)(A)).  But if "a third party fails to allege in its petition all elements necessary for recovery, including those related to standing, the court may dismiss the petition without providing a hearing."  Id. (quoting United States v. BCCI Holdings (Luxembourg) S.A. (Petitions of General Creditors), 919 F. Supp. 31, 36 (D.D.C. 1996)); see FED. R. CRIM. P. 32.2, Advisory Committee Notes, Subdivision (c) (quoting with approval the same passage of BCCI Holdings).

## III.  DISCUSSION

"Standing is a threshold consideration in all cases, including civil forfeiture cases."  United States v. One-Sixth Share Of James J. Bulger In All Present And Future Proceeds Of Mass Millions Lottery Ticket No. M246233, 326 F.3d 36, 40 (1st Cir. 2003) (citing United States v. Cambio Exacto, S.A., 166 F.3d 522, 526 (2d Cir. 1999)).  "Standing in forfeiture cases has both constitutional and statutory aspects."  United States v. White, 675 F.3d at 1078

---

[5]      Here, that means the law of the District of Columbia, where Mr. Emor's fraud occurred and where both SunRise and Core Ventures are registered.

(quotation marks omitted); accord United States v. One-Sixth Share, 326 F.3d at 40.  "To

establish constitutional standing, a party seeking to challenge a forfeiture of property must first

demonstrate an ownership or possessory interest in the seized property."  United States v. White,

675 F.3d at 1078 (quotation marks omitted).  Such an ownership interest "can be shown by

actual possession, control, title, [or] financial stake."  Id.

Statutory standing under 21 U.S.C. § 853(n) and Rule 32.2 likewise requires a

party to demonstrate that it has a legal interest in the seized property.  See United States v.

Timley, 507 F.3d 1125, 1129 (8th Cir. 2007).  "Thus, under both § 853 and Rule 32.2, a party

seeking to challenge the government's forfeiture of money or property used in violation of

federal law must first demonstrate [a legal] interest in the seized item sufficient to satisfy the

court of its standing to contest the forfeiture."  Id. (quoting United States v. Three Hundred Sixty

Four Thousand Nine Hundred Sixty Dollars ($364,960.00) in U.S. Currency, 661 F.2d 319, 326

(5th Cir. 1981) (alteration in original)).  Courts should not, however, conflate the constitutional

or statutory standing inquiries with the merits determination that comes later in the proceedings.

See United States v. One-Sixth Share, 326 F.3d at 41.

SunRise's petition offers four theories under which it maintains it possesses an

interest in the property seized from Core Ventures: (a) "as the secured lender to Core Ventures,"

(b) "because the Forfeited Property at all times remained the property of Sunrise Academy,"

(c) "as the assignee of all interest in the Forfeited Property of Core Ventures," and, alternatively,

(d) "as the beneficiary of a constructive trust imposed by law for the benefit of SunRise

Academy."  Pet. at 2.  In its memorandum opposing the government's motion to dismiss,

SunRise offers one more ostensible basis for its standing: (e) "as the victim of Mr. Emor's

fraud." Opp. at 14.  The Court concludes that none of these alternatives provides SunRise with

standing or entitlement to an ancillary hearing.  It will address each theory in turn.

### A.  Secured Lender to Core Ventures

SunRise claims an interest in the forfeited property as a "secured lender to Core

Ventures." Pet. at 2.  It contends that the money it transferred to Core's bank accounts — most

of which later was seized by the government — represented loans that "were, and are, fully

secured by and through Sunrise's ownership of Core Ventures and through Sunrise's control of

all membership interests in Core." Id. at 3.

SunRise's claim to be a *secured* lender is important, because "a general creditor

can never have an interest in specific forfeited property[.]" United States v. BCCI Holdings

(Luxembourg), S.A., 46 F.3d 1185, 1191 (D.C. Cir. 1995) (addressing forfeiture provision of the

Racketeer Influenced and Corrupt Organizations Act that is "identical" to 21 U.S.C. § 853(n)).

For example, "bank depositors, as general creditors, have no interest in the specific accounts to

which their deposits might be traced, only in the [bank]'s estate as a whole — and therefore can

have no interest in particular assets forfeited[.]" Id.  Indeed, the federal courts have consistently

held that unsecured creditors do not have standing to challenge the forfeiture of their debtors'

property. United States v. All Assets Held at Bank Julius Baer & Co., Ltd., 772 F. Supp. 2d 191,

198 (D.D.C. 2011) (citing United States v. One-Sixth Share, 326 F.3d at 41).  See, e.g., United

States v. Watkins, 320 F.3d 1279, 1283 (11th Cir. 2003) ("Unlike secured creditors, general

creditors cannot point to any one specific asset and claim that they are entitled to payment out of

the value of that specific asset.  General creditors instead enjoy a legal interest in the entire estate

of the debtor.") (quoting United States v. Reckmeyer, 836 F.2d 200, 204 (4th Cir. 1987)).  This

holds true even where a creditor or depositor unquestionably provided the specific funds seized

by the government from its debtor.  See, e.g., United States v. Salti, 579 F.3d at 669 (explaining that petitioner did not have standing merely because the seized funds previously were held in her bank account; this fact at most made her a general creditor) (citing DSI Assocs. LLC v. United States, 496 F.3d 175, 184 (2d Cir. 2007)).

SunRise therefore must make assertions in its petition that, if proven, would show it to possess a secured interest in the seized funds.  This SunRise fails to do.  Nowhere in its petition or even in its briefing does SunRise allege that the ostensible loans it made to Core Ventures were secured by any interest in property.  Instead, as noted, SunRise maintains that the alleged loans were secured by its "ownership of Core Ventures and through Sunrise's control of all membership interests in Core."  Pet. at 3.

SunRise cites no precedent from the District of Columbia or any other jurisdiction for the proposition that an ownership relationship between a lending entity and a borrowing entity converts a monetary transfer from the former to the latter into a secured loan.  And even if this were a correct statement of the law, SunRise's claim that it owned Core Ventures or its membership interests is unsupported by any well-pled factual allegations, as discussed in the next section.

Aside from this "ownership" theory, SunRise's petition makes no assertions of fact backing up its claim to be a secured lender of Core Ventures.  And despite being put on notice by the government's motion to dismiss about this deficiency in its petition, see Mem. at 2, 7-8, SunRise's opposition memorandum scarcely mentions this issue at all, asserting instead, without citing any case law, that SunRise "need not establish that it held a security interest in the property."  Opp. at 19.  As explained above, that is incorrect.

SunRise's opposition memorandum also asserts that it "had a common law security interest in the Core Venture bank accounts by virtue of its continuous exclusive dominion and control of the Core Ventures accounts, including the right to dispose of the funds in those accounts and authority to close the account and transfer all funds back to [SunRise] at any time." Opp. at 19. Again, SunRise fails to cite any law showing that the District of Columbia recognizes common law security interests under such circumstances. In any event, the only facts alleged by SunRise in support of this theory center around the signatory power held by SunRise employee and Board director Jamila Negatu over Core Ventures' bank accounts, along with her testimony about her understanding of the relationship between SunRise and Core Ventures. See id. at 19-20 & n.5. The Court already has concluded that these facts and this testimony do not show SunRise to have held any institutional power over Core Ventures, as to which Mr. Emor alone called the shots. See United States v. Emor, 850 F. Supp. 2d at 190-99.[6] Because SunRise offers no other support for its "common law security interest" theory, its argument founders as a matter of pleading — even if such a theory is valid under District of Columbia law, which SunRise has not even attempted to prove. SunRise's purported security interest thus provides no basis for its standing to contest the forfeiture.

### B. Owner of the Forfeited Property

SunRise also asserts that it has standing to contest the forfeiture "because the Forfeited Property at all times remained the property of Sunrise Academy." Pet. at 2. What

---

[6]     "The evidence clearly demonstrated that Ms. Negatu — a family friend since the age of twelve who was hired by SunRise for her first job out of college — did Mr. Emor's bidding virtually without question." United States v. Emor, 850 F. Supp. 2d at 200. "Her subservience to Mr. Emor was demonstrated by telephone calls between her and Mr. Emor while he was in prison, in which he could be heard ordering her in minute and pedantic detail to carry out various tasks. It was further demonstrated by the detailed logs of her daily activities that she was required to supply to Mr. Emor each week." Id.

SunRise means by this is not clear.  It is undisputed that the vehicle seized is titled in the name of

Core Ventures, not SunRise, and that the bank accounts are in the name of Core.  Because the

petition alleges that SunRise owns Core Ventures, however, see id. at 6-7, it appears that

SunRise is claiming to own the seized property by virtue of its alleged ownership of Core

Ventures.

        Based on the evidence and testimony introduced at the evidentiary hearing, the

Court determined that Mr. Emor alone owns Core Ventures, and that the company has no formal

legal ties to SunRise.  United States v. Emor, 850 F. Supp. 2d at 191-93.  While "Mr. Emor

urge[d] the Court to conclude that SunRise owns Core Ventures," the Court found no evidence

supporting that claim.  Id. at 192.  "Although the documentary record is slim," as the Court

summed up, "it tells a consistent story: that Charles Emor formed Core Ventures and is the sole

owner."  Id.; see id. at 191 ("[T]he evidence before the Court indicates that Core Ventures

is owned exclusively by Mr. Emor."); id. at 193 ("Mr. Emor's arguments regarding the

ownership of Core Ventures amount to little more than sophistry: the record before the Court

indicates unequivocally that he, and he alone, owns the company.").

        SunRise seeks to contest this finding and states that it "possesses documents

evidencing the fact that it is the owner of Core Ventures, LLC, through the members it

appointed, who hold their membership interests for the benefit and on behalf of SunRise."  Pet.

at 6.  SunRise asserts that "Mr. Emor was never the sole member of Core Ventures," and that any

membership interest that he possessed "was held on behalf of and for the benefit of SunRise and

was never a personal ownership by Mr. Emor."  Id. at 6-7.[7]  It is not self-evident that SunRise

---

[7]     It bears mentioning that earlier in these proceedings SunRise's former counsel
portrayed Core Ventures as an entity created by Mr. Emor and affiliated with SunRise only as a
borrower:  After the government seized the funds held in Core Ventures' bank accounts,
SunRise's counsel requested that those funds be "returned" to SunRise, and his letter noted that

has the right to contest the Court's determination about Core Ventures' ownership as a means of demonstrating its own standing.[8]  But even assuming so, this theory fails for other reasons.

SunRise offers no authority for the notion that a corporation like itself, nonprofit or otherwise, can own a limited liability company like Core Ventures "through the members it appointed."  Pet. at 6.  The burden rests with SunRise to demonstrate its legal standing to contest the forfeiture in this case, and simply throwing out a host of legal theories without providing any factual support or legal authority to bolster those theories does not satisfy that burden.

Nor has SunRise cited any authority for the proposition that being the owner of a limited liability company necessarily entails being the owner of that company's property.  In the analogous context of corporations, owned by shareholders, such is clearly not the case.  "It is well established that because of the separate legal existence of a corporation, the corporate property is vested in the corporation itself and not the stockholders," and thus "[e]ven if stock ownership is concentrated in the hands of one person, it does not alter the fact that title to the corporate property is vested in the corporation and not in the owner of its stock."  Estate of Raleigh v. Mitchell, 947 A.2d 464, 469 (D.C. 2008) (quoting Office of People's Counsel v. Pub.

---

"Core Ventures was an entity begun by Charles Emor, the founder of SRA."  Dkt. No. 31-2 at 2.  The government responded: "It is our understanding that you do not represent Core Ventures LLC and that entity is not a subsidiary of Sunrise Academy.  Please explain the factual and legal basis for your view that Sunrise Academy has legal standing to assert an interest in the seized Core Venture[s] funds."  Dkt. No. 31-10 at 1-2.  In reply, SunRise's then-counsel offered no basis for SunRise's interest in Core Ventures' funds other than its status as the lender of the funds; it did not dispute the government's understanding that Core Ventures "is not a subsidiary of Sunrise Academy."  Dkt. No. 31-11 at 3.

[8]     The finding that Mr. Emor is the exclusive owner Core Ventures played a significant role in the Court's conclusion that SunRise's monetary transfers to Core Ventures were part of Mr. Emor's fraudulent scheme — and thus that those transfers are subject to criminal forfeiture.  Ancillary proceedings, however, do not typically allow petitioners to relitigate a district court's conclusion that specific property is forfeitable to the United States.  United States v. White, 675 F.3d at 1077-78.  Instead, those proceedings allow petitioners to "make [a] claim of ownership and priority of interest only in relation to the government and any other petitioners."  Id. at 1078.

Serv. Comm'n of Dist. of Columbia, 520 A.2d 677, 681-82 (D.C. 1987)).  "Even complete

ownership of all outstanding stock of a corporation is not the equivalent of ownership of a

subsidiary's property or assets, because a parent and subsidiary comprise two wholly separate

entities with individual property rights[.]"  Office of People's Counsel v. Pub. Serv. Comm'n of

Dist. of Columbia, 520 A.2d at 682 (citing 18A AM. JUR. 2D CORPORATIONS § 751 (1985)).  The

District of Columbia Court of Appeals has held, for example, "that a corporation that owned all

of the stock of its three wholly owned subsidiaries, which in turn owned numerous taxicabs, was

not the legal owner of the vehicles."  Estate of Raleigh v. Mitchell, 947 A.2d at 469.  While a

different rule might possibly apply to limited liability companies, which have a different

organizational structure and, among other distinctions, are owned by their members rather than

by shareholders, SunRise offers nothing to suggest this is the case.  Thus, even if SunRise could

demonstrate that it is the "owner" of Core Ventures by virtue of its alleged control over Core

Ventures' members, SunRise has not shown that this alone would not make it the owner of Core

Ventures' property.[9]

       Moreover, even if owning Core Ventures would give SunRise an interest Core's

property sufficient to confer standing, SunRise has not pled any facts that, if proven, would show

that it actually owns Core Ventures or "controls" any of its membership interests.  The sum total

of SunRise's pleadings on this matter is as follows:

> Petitioner possesses documents evidencing the fact that it is the
> owner of Core Ventures, LLC, through the members it appointed,
> who hold their membership interests for the benefit and on behalf
> of SunRise.  Mr. Emor was never the sole member of Core
> Ventures.  Any membership interest Mr. Emor held in Core was

---

[9]     It is possible that ownership of Core Ventures might entail an equitable, as opposed to a legal, interest in that company's property that would furnish standing to contest the forfeiture, see United States v. BCCI Holdings (Luxembourg), S.A., 46 F.3d at 1189-90, but the other flaws in SunRise's argument obviate any need to explore this issue further.

> held on behalf of and for the benefit of SunRise and was never a
> personal ownership by Mr. Emor.

Pet. at 6-7.  This passage simply asserts legal conclusions and disregards specific factual findings

made by the Court, without furnishing any supporting factual allegations that have even a

modicum of specificity.

   The bare claim that "Mr. Emor was never the sole member of Core Ventures" not

only is contrary to all the evidence and testimony that was presented at the evidentiary hearing,

see United States v. Emor, 850 F. Supp. 2d at 191-93, but is devoid of critical supporting factual

allegations:  If other individuals besides Mr. Emor were members of the company, who were

they?  When and how did they become members?  What circumstances underlie the claim that

their interests in the company are not "personal" but rather held "for the benefit and on behalf of

SunRise?"[10]  Likewise, the unadorned assertion that "[a]ny membership interest Mr. Emor held

in Core was held on behalf of and for the benefit of SunRise and was never a personal ownership

by Mr. Emor" simply states a legal conclusion without supplying any alleged factual basis for

that conclusion.  Even at the pleading stage, the Court need not accept legal conclusions cast as

factual allegations.  Commonwealth of the N. Mariana Islands v. United States, 670 F. Supp. 2d

at 75.

   Finally, SunRise's coy promise that it "possesses documents evidencing the fact

that it is the owner of Core Ventures" does not make up for the absence of well-pled factual

---

[10] Furthermore, one might ask, how is this claim reconcilable with the fact that "[a]n
Operating Agreement for Core Ventures introduced by the government lists Charles Emor as the
sole initial member of the company," or with "Mr. Emor's failure to supply any documentation
whatsoever showing that Core Ventures is owned by anyone besides Mr. Emor"?  See United
States v. Emor, 850 F. Supp. 2d at 191 & n.2.

allegations that satisfy the requirements of 21 U.S.C. § 853(n)(3).[11]  That provision calls upon third-party petitioners to set forth, under penalty of perjury, "the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, [and] any additional facts supporting the petitioner's claim."  Id.  Complying with Section 853(n) and establishing statutory standing demands more from a petitioner than a mere promise to supply documents later.

      For a plethora of reasons, therefore, SunRise has not and cannot establish any interest in the forfeited property through its alleged ownership of Core Ventures.

### C.  Assignment or Transfer

      SunRise next contends that it has a legal interest in the seized property as a result of certain transfers and assignments that were made after the initiation of criminal proceedings against Mr. Emor.  Specifically, SunRise relies on two alleged transactions.  First, on November 29, 2010, Mr. Emor purportedly transferred to SunRise his membership interest in Core Ventures — a membership interest that the petition is careful to note "was always held on behalf of"

---

[11]     It is difficult to imagine what documents SunRise possibly could be referring to.  "In response to a government subpoena for all documents relating to Core Ventures, SunRise provided only minutes from two Board of Directors meetings" — the probity of which the Court rejected in its earlier Opinion.  United States v. Emor, 850 F. Supp. 2d at 192.  See also Dkt. No. 31-11 at 5 (letter dated Sept. 1, 2010 from SunRise's then-counsel to United States Attorney's Office, stating that, aside from these Board minutes, "[t]here are no further documents").  As for any new affidavits or declarations that may have been executed, the Court would give no weight to any affidavit by Mr. Emor on the matter, and the Court already has heard everything that Ms. Negatu knows about Core Ventures.  The third and final member of SunRise's Board of Directors during the period that Core Ventures was created and financed was Nicholas Anuforah, Mr. Emor's college-age son.  But "Mr. Emor formed Core Ventures in 2008, a year in which SunRise did not hold any Board meetings and before Ms. Negatu and Mr. Anuforah had joined the Board."  United States v. Emor, 850 F. Supp. 2d at 197.  The Court also has already heard extensive testimony about Core Ventures from current SunRise Board member Leonard Ozoemena, the signatory of SunRise's petition, who the Court found had no direct knowledge about these matters, since he was not involved with SunRise at the time, and whose testimony regarding the relationship between SunRise and Core Ventures the Court found "wholly incredible."  Id. at 185-86.

SunRise anyway.  Pet. at 4.  This alleged transfer occurred shortly after Mr. Emor's indictment, by which time the government already had seized Core Ventures' property.  See United States v. Emor, 850 F. Supp. 2d at 180.  Next, Core Ventures is said to have assigned its interest in the forfeited property to SunRise on May 21, 2012, the day before SunRise filed its verified petition. Pet. at 3-4.  This alleged assignment took place after Mr. Emor's guilty plea and roughly two months after the Court issued its Opinion, Findings of Fact, and Conclusions of Law holding that the forfeited property constituted proceeds of Mr. Emor's criminal fraud scheme.  See United States v. Emor, 850 F. Supp. 2d at 215.

Based on these alleged transfers or assignments, SunRise maintains that, as the assignee of Core Ventures, it "stands in the shoes of Core and has all rights that Core would have had if it had filed a third-party petition."  Opp. at 17-18.  As for the nature those rights, SunRise states that it "intends to establish that Core Ventures was a bona fide purchaser for value ('BFP') when it received loans from SRA in exchange for a promise to pay SRA."  Opp. at 17.  SunRise therefore "asks the Court to exempt Core Ventures' interest in the property from forfeiture as a BFP."  Id. at 18.

The suggestion that Core Ventures can confer standing on SunRise in this manner — by assigning to SunRise whatever legal interest it has in the seized property — is dubious.  To begin with, Core Ventures itself almost surely has no right to obtain a modification of the Court's preliminary forfeiture order, or to have the seized property returned to it.  One reason that the property is subject to criminal forfeiture in the first place is that the Court found Core Ventures to be an entity within Mr. Emor's exclusive control that was formed for no legitimate purpose, conducted no legitimate business, and was instead merely "a device contrived by Mr. Emor to create an extra layer disguising his personal exploitation of SunRise funds and making

those funds potentially available to him in the event of his incarceration or deportation." United States v. Emor, 850 F. Supp. 2d at 195.[12]

Participation in ancillary proceedings to assert a third-party interest in forfeited property is limited to persons "other than the defendant." 21 U.S.C. § 853(n)(2). Because the Court concluded that Mr. Emor created and used Core Ventures solely to squirrel away money for his own benefit — making it, in essence, a "nominee," or "one who holds bare legal title to property for the benefit of another," Scoville v. United States, 250 F.3d 1198, 1202 (8th Cir. 2001) (quoting BLACK'S LAW DICTIONARY (7th ed. 1999)) — Core presumably has no more right to seek a return of the forfeited property (or to assign that right to SunRise) than Mr. Emor himself. See United States v. Cambio Exacto, S.A., 166 F.3d at 527 ("[W]e have, for example, denied standing to 'straw' owners who do indeed 'own' the property, but hold title to it for somebody else. Such owners do not themselves suffer an injury when the property is taken.") (citing United States v. Premises & Real Prop. with Bldgs., Appurtenance & Improvements at 500 Delaware St., Tonawanda, New York, 113 F.3d 310, 312 (2d Cir. 1997)); Via Mat Int'l S. Am. Ltd. v. United States, 446 F.3d 1258, 1262 n.5 (11th Cir. 2006) (noting that "'straw owners' . . . do not necessarily suffer an injury that is sufficient to demonstrate standing"); United States v. Weiss, 467 F.3d 1300, 1308-09 (11th Cir. 2006) (affirming dismissal for lack of standing and explaining that "a person or entity cannot have a vested interest in property if that person or

---

[12]     As the Court explained, "at the time Mr. Emor formed Core Ventures he had reason to believe that he would be incarcerated and/or deported as a result of his prior conviction, which was then on appeal. Moving SunRise funds into a separate entity over which he held exclusive control ensured continued access to these funds in the event that he lost signatory authority over SunRise's accounts. Moreover, adding an additional layer of ownership had the effect of obscuring any present expenditure of SunRise funds for Mr. Emor's own benefit." United States v. Emor, 850 F. Supp. 2d at 218; see id. at 218-19 ("Undoubtedly, the transfer of over $2 million to Core Ventures — without any contract, loan agreement, or other documentation requiring the company to return the money — had the effect of placing SunRise funds in Mr. Emor's hands, and his [immediate] purchase of the Lexus illustrates that his motive for ensuring the continued availability of these funds was to use them for his own benefit.").

entity is found to be acting as a nominee for someone whose property is subject to the forfeiture").

Even putting this problem aside, but see infra at 22-23, Core Ventures still cannot demonstrate an interest in the forfeited property that satisfies the relevant statutory requirements, and any "assignment" of its rights to SunRise therefore confers no benefit.  A third-party petitioner is entitled to an ancillary hearing only if it alleges a legal interest that, if established, would compel amendment of the preliminary forfeiture order.  United States v. BCCI Holdings (Luxembourg), S.A., 46 F.3d at 1188 (addressing 18 U.S.C. § 1963(*l*)(2)).  Amendment of a preliminary forfeiture order is required only if a petitioner establishes either of two circumstances by a preponderance of the evidence, neither of which Core Ventures can possibly show.

The first such circumstance is that "the petitioner has a legal right, title, or interest in the property" that "renders the order of forfeiture invalid in whole or in part" because the right, title, or interest "was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section."  21 U.S.C. § 853(n)(6)(A).  SunRise does not argue that Core Ventures has a legal interest in the seized property by virtue of this provision. See Pet.; Opp. at 16-20.[13]

_____

[13]      Nor could it.  Core Ventures clearly had no right, title, or interest in the funds before they were transferred to its bank accounts, and those fraudulent transfers were the very acts giving rise to the United States' entitlement to forfeiture of the funds — an entitlement that takes effect simultaneously with the unlawful acts.  See 21 U.S.C. § 853(c) ("All right, title, and interest in property described in subsection (a) of this section vests in the United States upon the commission of the act giving rise to forfeiture under this section."); United States v. Lazarenko, 476 F.3d 642, 647 (9th Cir. 2007) ("Forfeiture relates back to the time of the criminal acts giving rise to the forfeiture.  In other words, the United States' interest in the property vests at the time the defendant commits the crime."); United States v. Schecter, 251 F.3d 490, 494 (4th Cir. 2001) ("A forfeiture is effective at the time of the commission of the act giving rise to the forfeiture.").

The other circumstance under which a petitioner may obtain modification of a preliminary forfeiture order — and the one upon which SunRise relies — is that "the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section."  21 U.S.C. § 853(n)(6)(B).  SunRise's theory, as noted, is that Core Ventures was a bona fide purchaser for value of the seized property, giving it a legal interest in the property and standing to contest the forfeiture — and that SunRise inherited both this legal interest and this standing when Core Ventures made the assignment to SunRise.  See Opp. at 17-18.

This theory will not work, even at the pleading stage, because SunRise furnishes no factual assertions that, if proven, would show Core Ventures to be a bona fide purchaser for value of the seized funds.  According to SunRise's own narrative, Core Ventures did not purchase anything for value from SunRise, but merely received several loans that were unsecured by any property.  Although SunRise maintains that the "value" provided in exchange for these purported loans was "a promise by Core Ventures to repay the loans," Opp. at 17, being the recipient of an unsecured loan that one promises to repay is not the same thing as being a "purchaser for value."  SunRise's expansive view of that term is not supported by any authority. Cf. Associates Fin. Servs. of Am., Inc. v. Dist. of Columbia, 689 A.2d 1217, 1222 (D.C. 1997) ("[A] bona fide purchaser is one who acquires an interest in property *for a valuable consideration*[.]") (quoting Clay Properties, Inc. v. Washington Post Co., 604 A.2d 890, 894 (D.C. 1992) (en banc) (emphasis added)).

Even if Core Ventures did "purchase" for value the funds given to it by SunRise, the forfeiture statute also demands that a bona fide purchaser for value "was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under

this section." 21 U.S.C. § 853(n)(6)(B).  In other words, if a party knows or has undeniable

evidence that the property it purchases represents the proceeds of criminal activity, that party

cannot later obtain a return of the property under Section 853(n)(6)(B) if it is seized by the

government.  See United States v. Frykholm, 362 F.3d 413, 416-17 (7th Cir. 2004).  Because all

of Core Ventures' activity was orchestrated exclusively by Mr. Emor, who used the company "as

another means of implementing his fraud scheme," United States v. Emor, 850 F. Supp. 2d at

190-91, Core obviously cannot hope to demonstrate that it obtained the funds from SunRise

reasonably without cause to believe that they were subject to criminal forfeiture.

   To be sure, had Core Ventures filed its own verified petition for a hearing, it

could have challenged the Court's conclusion that it was created and used by Mr. Emor only to

perpetuate fraud — much like an entity that has been deemed a defendant's alter ego before a

preliminary forfeiture order may contest that finding in subsequent ancillary proceedings.  See

United States v. BCCI Holdings (Luxembourg), S.A., 977 F. Supp. 27, 32-33 (D.D.C. 1997).

And if SunRise now possesses all of Core Ventures' interests in the seized property, so the

argument might go, then it has inherited Core Ventures' right to challenge the Court's findings.

   That possibility matters little, however, because neither in its petition nor in its

briefing does SunRise allege a single fact that would undermine the Court's prior conclusions.

See United States v. BCCI Holdings (Luxembourg), S.A., 977 F. Supp. at 33 (acknowledging

that a third-party petitioner may challenge a preliminary forfeiture order that was "based upon a

previous *alter-ego* finding" but explaining that "the petitioner must allege facts that raise, or are

subject to a reasonable inference that raises, a dispute regarding the previous *alter-ego* finding,"

and dismissing a verified petition that failed to do so).  Instead, SunRise merely highlights the

same facts and reiterates the same legal arguments purportedly illustrating the legitimacy of Core

Ventures that the Court addressed at length in its earlier Opinion, Findings of Fact, and

Conclusions of Law.  <u>Compare</u> Opp. at 8-13, 17-20, <u>with</u> <u>United States v. Emor</u>, 850 F. Supp. 2d

at 190-99, 218-19.  Nothing new is alleged that, if true, would show Core Ventures to be a bona

fide purchaser for value of the seized funds, as SunRise maintains.  And because that is the only

theory advanced by SunRise in support of its standing as an assignee, SunRise is not entitled to a

hearing on this basis.

### D.  Constructive Trust

Failing all else, the petition maintains that SunRise has standing to contest the

forfeiture as the beneficiary of a constructive trust imposed by law.  This theory is doubly

foreclosed.

"Under the common law of some states, a constructive trust is said to arise

automatically upon the commission of the act — fraud, for example — resulting in the unjust

enrichment of one party and injury to another.  In other states, the trust arises only at the time

that a court orders it imposed as a remedy."  <u>United States v. All Assets Held at Bank Julius Baer</u>

<u>& Co.</u>, 772 F. Supp. 2d at 200 (citation omitted).  Constructive trust doctrine "has proven useful

for would-be claimants in forfeiture actions," because it may permit a party who has neither title,

nor possession, nor a secured interest in the seized property to claim standing to challenge the

forfeiture "on the ground that the party has an equitable interest in the property arising from the

automatic imposition of a constructive trust upon the occurrence of some act of fraud or

mistake."  <u>Id</u>.  "The United States Court of Appeals for the District of Columbia Circuit does not

subscribe to this theory of standing in forfeiture cases," however.  <u>Id</u>. (citing <u>United States v.</u>

<u>BCCI Holdings (Luxembourg), S.A.</u>, 46 F.3d 1185 (D.C. Cir. 1995)).  In <u>BCCI Holdings</u>, the

court of appeals reasoned that the forfeiture section of the Racketeer Influenced and Corrupt

Organizations Act — which it observed was "identical" to the statutory section at issue here, 21

U.S.C. § 853(n) — established a remedial scheme that "creates a retroactive legal fiction similar

to a constructive trust for the benefit of the United States," and which "reaches back to the time

of the criminal acts to forfeit the property to the United States."  Therefore, "[i]t is not open to a

court to fashion another remedy (a competing fiction) that also reaches back to snatch the

property away from the United States — which is exactly what a constructive trust would do."

United States v. BCCI Holdings (Luxembourg), S.A., 46 F.3d at 1191.

The reasoning of BCCI Holdings, fully applicable here, prevents SunRise from

challenging the forfeiture of the property based on a constructive trust.[14]  SunRise responds only

by stating that the D.C. Circuit's "result-oriented decision" has been rejected by other circuits,

and that the decision "is simply flat-out wrong in its discussion of when a constructive trust

arises."  Opp. at 22.  SunRise may direct those criticisms to the court of appeals.

Furthermore, even if the constructive trust device allowed third parties to contest

criminal forfeitures, SunRise would not be entitled to the benefit of that device.  "As a general

principle, and without accounting for variations in the common law of different states, a

constructive trust is said to arise '[w]here a person holding title to property is subject to an

equitable duty to convey it to another on the ground that he would be unjustly enriched if he

were permitted to retain it.'"  United States v. All Assets Held at Bank Julius Baer & Co., 772 F.

Supp. 2d at 199-200 (quoting RESTATEMENT (FIRST) OF RESTITUTION § 160 (1937)).  "So, for

---

[14]        The applicability of BCCI Holdings is supported not only by the similarity
between 21 U.S.C. § 853(n) and the RICO provision addressed in that case, but also by the fact
that the ultimate source of authorization for criminal forfeiture here is 18 U.S.C. § 981.  See
United States v. Emor, 850 F. Supp. 2d at 216-17.  Section 981 provides that "[a]ll right, title,
and interest in property [subject to forfeiture] . . . shall vest in the United States upon
commission of the act giving rise to forfeiture."  18 U.S.C. § 981(f).  "Thus, like the RICO
statute, Section 981 reaches back in time to forfeit property to the government and pre-empts
competing legal fictions, such as a constructive trust."  United States v. All Assets Held at Bank
Julius Baer & Co., 772 F. Supp. 2d at 201.

example, if 'a fraudster acquires property from a victim by fraud,' a court may find that 'the fraudster holds the property in constructive trust for his victim,' and thus may be compelled to return the property." Id. (quoting United States v. $4,224,958.57, 392 F.3d 1002, 1004 (9th Cir. 2004)).

State law determines whether a petitioner is the beneficiary of a constructive trust, just as it determines other aspects of a petitioner's legal interest in forfeited property. Willis Mgmt. (Vermont), Ltd. v. United States, 652 F.3d at 242 (citing Pacheco v. Serendensky, 393 F.3d at 353-56). In the District of Columbia, the constructive trust doctrine may be employed to prevent the unjust enrichment that would occur where one party confers a benefit on another party and "the recipient of the benefit has a duty to make restitution to the other person" because "'the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for [the recipient] to retain it.'" Peart v. Dist. of Columbia Hous. Auth., 972 A.2d 810, 813 (D.C. 2009) (quoting 4934, Inc. v. District of Columbia Dep't of Employment Servs., 605 A.2d 50, 55-56 (D.C. 1992)); see Graves v. Graves, 51 A.3d 521, 524 n.6 (D.C. 2012) ("A constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if permitted to retain it.") (quoting Gray v. Gray, 412 A.2d 1208, 1210 (D.C. 1980)).

In this case, although the funds that Mr. Emor caused to be transferred to Core Ventures for his own benefit came from SunRise's bank account, the root source of those funds was the District of Columbia, which provided the money (some of which came from the federal government) to SunRise as reimbursement for educational services. Because the Court found that SunRise functioned as Mr. Emor's alter ego during the fraud scheme and that — where SunRise could conceivably be seen as acting independently — it facilitated Mr. Emor's fraud,

the Court held that for restitution purposes SunRise could *not* be considered a victim of his fraud, and that the District of Columbia and the federal government were the "ultimate victims" of the scheme.  United States v. Emor, 850 F. Supp. 2d at 210-15.  The evidence supporting SunRise's acquiescence in Mr. Emor's fraud was legion:

> As the Court already has explained, Mr. Emor did not hide his personal exploitation of SunRise funds from the staff who answered to him or from the members of SunRise's Board. Indeed, those individuals often facilitated his theft of funds, whether through writing checks and wiring money, approving payments to benefit Mr. Emor's family, rubber-stamping the purported loans to Core Ventures, or authorizing a $500,000 "bonus" to Mr. Emor just before he was to report to prison after his appeals were exhausted in his prior criminal case. To the limited extent that SunRise as an institution could be said to have had any independence from Mr. Emor, therefore, it fully sanctioned and participated in his fraudulent diversion of government-derived funds for his own benefit.

Id. at 210.

Under these circumstances, allowing SunRise to reap the benefit of a constructive trust by recouping the funds it relinquished to Core Ventures would, to put it mildly, not serve an equitable purpose.  See United States v. $3,000 in Cash, 906 F. Supp. 1061, 1066 (E.D. Va. 1995) (rejecting petitioner's standing to contest forfeiture based on Virginia constructive trust doctrine and observing that "the equitable remedy of a constructive trust is unavailable to [the petitioner] because he has unclean hands").  Thus, even if constructive trust doctrine were a means by which parties could establish standing to contest a criminal forfeiture — which, in this circuit, it is not — SunRise would not be entitled to the benefit of that device in this case.

### E.  Victim of Mr. Emor's Fraud

SunRise's opposition memorandum introduces a new theory not raised in its petition — that if the Court declines to revisit its earlier findings regarding the relationship

26

among SunRise, Core Ventures, and Mr. Emor's fraud scheme, then SunRise has standing to contest the forfeiture "as the victim of Mr. Emor's fraud." Opp. at 14-16.  Merely being the victim of a defendant's fraud, however, does not confer an interest in specific property or provide standing to contest a criminal forfeiture.  While a fraud victim may have a cause of action against the defendant, such a victim would be in the same position as a general creditor. See United States v. BCCI Holdings (Luxembourg), S.A., 980 F. Supp. 16, 21 (D.D.C. 1997) (dismissing third-party petition because, "assuming that the petitioner is a victim of BCCI's fraud, it has, at most, a cause of action, making its status no greater than that of a general creditor").  As explained above, general creditors lack standing to contest the forfeiture of specific property seized from a criminal defendant.  See supra at 10-11.  Victims of a defendant's fraud may seek relief by petitioning the Attorney General for mitigation or remission of a forfeiture, or to restore forfeited property, see 21 U.S.C. § 853(i)(1), but victim status alone does not authorize participation in ancillary proceedings.  "Congress did not intend section 853(n) to serve as a vehicle by which all innocent third parties who are aggrieved by an order of criminal forfeiture can petition for judicial relief."  United States v. Lavin, 942 F.2d 177, 185 (3d Cir. 1991).  Rather, Congress "intended to accord standing to only two narrow classes of third parties, and intended to require all other third parties to petition the Attorney General for relief." Id. (citing 21 U.S.C. § 853(i)).

### F.  Miscellaneous Matters

Two final observations.  First, SunRise devotes much of its opposition memorandum to challenging the Court's determination that SunRise functioned as Mr. Emor's alter ego during the period of his fraud scheme.  See Opp. at 25-44.  This discussion appears to be in response to the government's contention that SunRise, as Mr. Emor's alter ego, cannot

contest the forfeiture because it is not a party "other than the defendant."  21 U.S.C. § 853(n)(2).

See Mem. at 1-2.  While the Court has not relied on the government's contention as a basis for

dismissing SunRise's petition, it nevertheless has reviewed SunRise's arguments and finds them

unpersuasive.

   In support of its assertion that SunRise was not Mr. Emor's alter ego during his

fraud scheme, and that "reverse piercing" its corporate veil for restitution purposes was

impermissible and inappropriate, SunRise cites several decisions not discussed by this Court in

its earlier Opinion — but none suggests a different result.[15]  As for the decisions that the Court

applied in its earlier Opinion, the Court's analysis is not undermined simply because the

circumstances in those cases were, as SunRise stresses, different from the facts here.  Piercing

the corporate veil "is an equitable remedy, whose exercise is subject to the sound discretion of

the trial judge" based on the particular facts of the case.  United States v. Emor, 850 F. Supp. 2d

at 204-05 (quoting United States v. Andrews, 146 F.3d 933, 940 (D.C. Cir. 1998)).  The

---

[15] In Matijkiw v. Strauss, No. 2008 CA 4996B, 2011 D.C. Super. LEXIS 13 (D.C. Super. Ct. 2011), Judge Burgess found reverse piercing of the corporate veil appropriate in the circumstances before him, explaining that "[i]n reverse veil-piercing, a party seeks not to hold the individual liable for the entity's conduct, but the entity liable for the individual's conduct." Id. at 23.  Nothing in the opinion is contrary to this Court's alter ego determination.  In Amore ex rel. Estates of Amore v. Accor, 529 F. Supp. 2d 85 (D.D.C. 2008), Judge Urbina rejected a tort plaintiff's request for reverse piercing of the corporate veil because, unlike the situation presented here, "the plaintiff fail[ed] to allege that the defendants perpetuated a fraud or injustice through abuse of the corporate structure."  Id. at 94.  The court in Amore contrasted the notable absence of such allegations with the circumstances in Pacific Dev. Inc. v. United States, No. 77-0690, 1979 WL 1283 (D.D.C. Jan. 3, 1979), where, much like in this case, "the corporate form was used in violation of public policy" and therefore "the court reasoned that the corporate veil was properly pierced."  Id.  Finally, the court of appeals in U.S. ex rel. Siewick v. Jamieson Sci. & Eng'g, Inc., 322 F.3d 738, 741 (D.C. Cir. 2003), in devoting one paragraph to an argument that was made in a footnote, merely explained the difference between a corporation engaging in fraud and its corporate form itself being fraudulent — a distinction never lost on this Court, which held that during Mr. Emor's scheme "there [was] such a unity of interest between Mr. Emor and SunRise, and such merging of their identities, that the two effectively no longer ha[d] separate personalities," based in part on the finding that Mr. Emor "possessed unchecked authority to make use of [SunRise's] funds as he saw fit [and] exercised ultimate power over all its corporate decisionmaking."  United States v. Emor, 850 F. Supp. 2d at 201.

"'essential legal test in all jurisdictions' is whether it would be equitable to look behind the corporate form under the circumstances presented." Id. at 207 (quoting United States Through the Small Bus. Admin. v. Trotter, 731 F.2d 8, 13 (D.C. Cir. 1984)).  The Court's earlier Opinion speaks for itself, and the Court sees no reason to revisit its alter ego determination.

Second, SunRise accuses the government of a bait-and-switch of sorts, noting that when SunRise attempted to intervene in this action before Mr. Emor's plea, to force the government to relinquish the seized property, the government successfully argued that SunRise was statutorily barred from seeking this relief until the commencement of ancillary proceedings. Now that SunRise has attempted to initiate such proceedings, however, the government argues that SunRise lacks standing to do so.  See Opp. at 1-2, 20-21.  There is no inconsistency in the government's position.  As the Court has explained, the law provides that *no one* may intervene in a criminal proceeding to seek the return of seized property until after the entry of a preliminary forfeiture order.  Sunrise Academy v. United States, 791 F. Supp. 2d at 204.  After the issuance of such an order, third parties may file verified petitions to assert their interests in the forfeited property — but a petition from any party who lacks standing may be dismissed without a hearing.  See supra at 6-8.

## IV.  FINAL ORDER OF FORFEITURE

In addition to granting the government's motion to dismiss SunRise's verified petition for an ancillary hearing, the Court also will grant the government's motion under Rule 32.2 of the Federal Rules of Criminal Procedure to amend the preliminary forfeiture order to reflect that it now is a final order of forfeiture.  The United States provided the required notice of the preliminary order in accordance with 21 U.S.C. § 853(n)(1), and no party other than SunRise filed a petition for an ancillary hearing.  See Dkt. No. 117 ¶¶ 2-3; Dkt. Nos. 117-1,

117-2.  Because the Court today dismisses SunRise's petition, and because no other third-party

petitioners remain, the preliminary order will become final as to all parties, and the Court will

issue a final order of forfeiture.

## V.  CONCLUSION

For the reasons stated above, the Court will grant the United States' motion to

dismiss SunRise's verified petition and for a final order of forfeiture.  An Order consistent with

this Opinion and a Final Order of Forfeiture will issue this same day.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
DATE:  June 18, 2013                     United States District Judge